IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| SANDRA R. RUBIN | |
| | : |
| | |
| v. | :   Civil Action No. DKC 14-3246 |
| | : |
| NORWICH COMMERCIAL GROUP, INC. | |
| d/b/a Norcom Mortgage | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this negligence and fraud case is a motion for summary judgment filed by Defendant Norwich Commercial Group, Inc. ("Norcom" or "Defendant"). (ECF No. 21). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted.

**I.   Background**

**A.   Factual Background**

Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff Sandra Rubin ("Plaintiff"). In July 2013, Plaintiff submitted an online inquiry regarding the possibility of taking out a reverse mortgage on her condominium in Silver Spring, Maryland. (ECF No. 23-3 ¶ 1). In July, Plaintiff received responses from multiple lenders attempting to secure her business. (ECF No. 21-3, at 6). One such lender was Mr.

Rayburn George, Jr., who, according to Plaintiff, represented that he worked for Norcom. (*Id.*). Shortly thereafter, Mr. George met Plaintiff at her apartment to discuss her financial situation. He told Plaintiff that she could not obtain a reverse mortgage, but suggested that she restructure her finances by purchasing an annuity. Mr. George explained to Plaintiff that such an annuity would be "virtually risk free" and would allow her to receive monthly checks to cover her expenses. (ECF No. 23-3 ¶ 3).

On Mr. George's recommendation, Plaintiff liquidated her stocks and wrote multiple checks to MFG, Inc., which Mr. George told Plaintiff "was an acronym for Norcom's clearing house, Matrix Financial Group, Inc." (*Id.* ¶ 4). Plaintiff wrote a check to MFG for $36,000 on August 2, 2013, and for $99,000 on August 5. (*Id.*). Plaintiff believed that Mr. George would purchase an annuity with these funds to supplement her monthly income. Mr. George did not purchase an annuity for Plaintiff, but sent Plaintiff some monthly payments from MFG to create the appearance that an annuity existed. In October, Plaintiff wrote a $4,000 check to MFG to invest in the purported annuity. (ECF No. 21-3, at 10).

In early 2014, Mr. George contacted Plaintiff about refinancing her mortgage with Norcom. (ECF Nos. 21-3, at 11; 23-3 ¶ 6). Mr. George suggested that Plaintiff would receive

approximately $60,000 from refinancing, which she could put into her annuity.  (ECF Nos. 21-3, at 11; 23-3 ¶ 6).  According to Plaintiff, "in order to get [her] loan application approved, Mr. George forged a set of documents" regarding the nonexistent annuity.  (ECF No. 23-3 ¶ 8).  Mr. George did not show Plaintiff the documents.  On February 21, 2014, Norcom approved Plaintiff for refinancing and she received approximately $61,797.28.  (ECF Nos. 21-3, at 15; 23-3 ¶ 9).  On February 26, at Mr. George's request, Plaintiff wrote a check to MFG for $59,000.  (ECF Nos. 21-3, at 15; 23-3 ¶ 12).

Plaintiff conducted no further business with Mr. George and had difficulty reaching him to inquire about her investments and the status of her money.  (ECF No. 21-3, at 15).  In the end, Plaintiff paid Mr. George and MFG approximately $198,000, receiving only $30,260.45 in return.[1]  (*See* ECF No. 21-3, at 9).  Plaintiff contends that she "lost everything [she] had to Mr. George" and "subsequently had to sell [her] condominium, move to Florida where [she] live[s] in a trailer with [her] daughter" living "month to month" on social security.  (ECF No. 23-3 ¶ 15).

Despite Plaintiff's initial belief that Mr. George worked for Norcom when he first reached out to her in July 2013, the

_____

[1] Plaintiff no longer asserts Norcom is liable for this full amount.  The full amount is included here as factual background.

parties now agree that Mr. George began working for Norcom on August 22, 2013. (ECF Nos. 21-1, at 3; 23, at 3). In late July 2013, Mr. George approached Norcom seeking to open a Norcom branch in York, Pennsylvania. (ECF No. 21-4 ¶ 6). Before starting at Norcom, Mr. George worked for other financial lending companies out of the same office in York. (*See* ECF Nos. 21-4 ¶ 7; 21-7, at 3; 21-10, at 3-4). Mr. George's duties as branch manager of Norcom's York office were to manage staff and payroll, assist in problem solving, oversee marketing and daily operations, and manage the loan files and pipeline of work for the branch's loan officers. (*See* ECF Nos. 21-4 ¶ 41; 21-10, at 5; 21-11, at 5). Mr. George helped loan officers with individual cases, but he was not authorized to accept funds from customers or potential customers on behalf of Norcom. (ECF Nos. 21-4 ¶¶ 24-26; 21-10, at 5). Mr. George resigned from Norcom on April 4, 2014. (ECF No. 21-4 ¶ 20). On September 2, 2014, Mr. George committed suicide. (*Id*. ¶ 21). A note addressed "to the authorities," which was signed by Mr. George stated that he takes "full responsibility for any and all acts deemed inappropriate or illegal with regard to any mortgage originations, insurance sales/claims, or investment sales/claims." (ECF No. 21-8).

B.    **Procedural History**

Plaintiff commenced this action by filing a complaint on October 16, 2014. (ECF No. 1). After an unsuccessful settlement conference, Plaintiff filed an amended complaint on June 26, 2015 (ECF No. 22), which Defendant answered (ECF No. 24). The amended complaint asserts two counts against Defendant: negligence (Count I); and fraud under a *respondeat superior* theory of liability for Mr. George's actions (Count II). The amended complaint requests compensatory damages in the amount of $200,000, but Plaintiff has since noted that she "is not pursuing claims from Norcom for damages sustained by Plaintiff prior" to when Mr. George joined Norcom. (*See* ECF No. 23, at 1). On October 23, Defendant filed the pending motion for summary judgment. (ECF No. 21). Plaintiff responded (ECF No. 23), and Defendant replied (ECF No. 25).

## II. Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *See Liberty Lobby,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993)

(quoting *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

### A.   Direct Negligence and Negligent Supervision

In her response to Defendant's motion for summary judgment, Plaintiff notes that she "is not pursuing claims based on a theory of negligent hiring," but rather is asserting claims of direct negligence and negligent supervision.  (ECF No. 23, at 1).   In  addressing  Plaintiff's  direct  negligence  claim, Defendant argues that Plaintiff is attempting impermissibly to amend her complaint through her response.  (*See* ECF No. 25, at 7).  The amended complaint, however, asserts a broad claim of "negligence" against Defendant, and includes factual allegations of direct negligence.  (ECF No. 22 ¶¶ 14-18).  Specifically, the amended  complaint  alleges:  "Norcom  negligently  failed  to identify  and  act  upon  [forged  documents]  even  though  the falsified annuity paperwork was central to its confirmation of [Plaintiff's]  ability  to  repay  the  Norcom  loan;"  and  "Norcom failed  to  make  a  single  independent  contact  with  [Plaintiff] after it introduced Mr. George to her."  (ECF No. 22 ¶¶ 15-16). Therefore, the amended complaint contains sufficient allegations to state a claim of direct negligence against Defendant.

Defendant next contends that, even if the amended complaint states a claim of direct negligence, Plaintiff has not provided

any evidence that Norcom breached the applicable standard of
care.   (ECF No. 25, at 8-9).   Plaintiff argues that it is
"widely known" that "underwriters have two essential functions:
(a) verifying that the borrower has good title to the
collateral; and (b) verifying income to support the loan
repayments."   (ECF No. 23, at 10).   She further asserts that
"Norcom had to be aware that it was critical to prove and
confirm her sources of funds for repayment."   (*Id.*).

"In a negligence case, there are four elements that the
plaintiff must prove to prevail: 'a duty owed to him [or her]
(or to a class of which he [or she] is a part), a breach of that
duty, a legally cognizable causal relationship between the
breach of duty and the harm suffered, and damages.'"   *Schultz v.
Bank of America, N.A.*, 413 Md. 15, 27-28 (2010) (quoting *Jacques
v. First Nat'l Bank*, 307 Md. 527, 531 (1986)).   "In a case of
alleged negligence by a professional, [such as a loan officer or
banker,] the plaintiff bears the burden of overcoming the
presumption that due skill and care were used," often by
presenting expert testimony "to establish the requisite standard
of care owed by the professional."   *Id.* at 28-29 (citations and
internal quotation marks omitted).   "If the plaintiff presents
no such evidence, the trial 'court may rule, in its general
power to pass upon the sufficiency of the evidence, that there
is not sufficient evidence to go to the [trier of fact].'"   *Id.*

at 29 (alteration in original) (quoting *Rodriguez v. Clarke*, 400 Md. 39, 71 (2007)).   In *Schultz*, the Court of Appeals of Maryland noted that expert testimony may not be necessary when "the alleged negligence, if proven, would be so obviously shown that the trier of fact could recognize it without expert testimony," such as in cases "where a dentist extracts the wrong tooth, a doctor amputates the wrong arm or leaves a sponge in a patient's body, or an attorney fails to inform his client that he has terminated his representation."  *Id.*

The *Schultz* court held that, in a situation regarding a bank's duty to a customer, the plaintiff was required to present expert testimony in order to establish the requisite standard of care.  *Id.* at 34-35; *see also Willes v. Wells Fargo Bank, N.A.*, No. CCB-12-137, 2015 WL 1237193, at *3 (D.Md. Mar. 16, 2015) (granting the defendant's motion for summary judgment in a subprime mortgage case because the plaintiff did not put forth expert testimony).   Here, Plaintiff has not put forth expert testimony or any evidence whatsoever regarding the standard of care, if any, that Norcom owed her.   Conclusory assertions in her response, which are unsupported by any legal authority, are not sufficient at the summary judgment stage.   Accordingly, Defendant is entitled to summary judgment on Plaintiff's direct negligence claim in Count I.

As for Plaintiff's negligent supervision claim, her response does not address the arguments in Defendant's motion, and she has failed to put forth evidence sufficient to survive summary judgment.

> In order to prove a cause of action for either negligent hiring, supervision or retention, the [p]laintiff must establish that her injury was caused by the tortious conduct of [the employee], that the employer knew or should have known by the exercise of diligence and reasonable care that the [employee] was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the [p]laintiff's injuries.

*Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F.Supp. 720, 751 (D.Md. 1996) (citing *Evans v. Morsell*, 284 Md. 160, 165 (1978)).   Plaintiff has put forth no evidence showing that anyone at Norcom knew or should have known about Mr. George's conduct.   Plaintiff does not challenge the veracity of the sworn statements made by current and former Norcom employees averring that no other Norcom employee knew about Mr. George's schemes. (ECF Nos.  21-4  ¶¶  21-23;  21-7,  at  6-7;  21-10,  at  5-6). Plaintiff admitted in her own deposition that she was not aware of any evidence that other Norcom employees knew about Mr. George's actions.   (ECF No. 21-3, at 16).   Moreover, Plaintiff has  not  shown  that  Norcom  failed  to  use  proper  care  in

supervising Mr. George.  Philip F. DeFronzo, Norcom's president, outlined in his affidavit the steps Norcom took to supervise Mr. George and the York office, which included: three senior managers visiting the office in October 2013 to conduct a "review of the facility, personnel, signage, lobbying disclosures and training"; a visit by Norcom's general counsel and chief compliance officer in November 2013 "for additional review and training related to legal and regulatory compliance"; and periodic quality control measures and reviews throughout 2013 and 2014.  (ECF No. 21-4 ¶¶ 14-19).  Plaintiff does not dispute these facts and does not show how such actions constituted a failure to exercise proper care in supervising Mr. George.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's negligent supervision claim in Count I.

B. *Respondeat Superior* **Liability for Mr. George's Fraud**

"Litigants may invoke the doctrine of *respondeat superior* as a means of holding an employer, corporate or otherwise, vicariously liable for the tortious conduct of an employee, where it has been shown that the employee was acting within the scope of the employment relationship at the time." *So. Mgmt. Corp. v. Taha*, 378 Md. 461, 480-81 (2003).  "To be within the scope of the employment the conduct must be of the kind the [employee] is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of

employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master." *E. Coast Freight Lines v. Mayor of Balt.*, 190 Md. 256, 285 (1948); *see also Sawyer v. Humphries*, 322 Md. 247, 255 (1991). Courts in Maryland generally apply the following factors when considering if an employee committed acts within the scope of employment:

> (a) whether or not the act is one commonly done by such servants; (b) the time, place and purpose of the act; (c) the previous relations between the master and the servant; (d) the extent to which the business of the master is apportioned between different servants; (e) whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant; (f) whether or not the master has reason to expect that such an act will be done; (g) the similarity in quality of the act done to the act authorized; (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant; (i) the extent of departure from the normal method of accomplishing an authorized result[;] and (j) whether or not the act is seriously criminal.

*Sawyer*, 322 Md. at 256 (internal quotation marks omitted) (incorporating factors from First Restatement of Agency § 229).

Of particular relevance here, "[t]he general rule is that, 'for an employee's tortious acts to be considered within the scope of employment, the acts must have been in furtherance of the employer's business and authorized by the employer.'" *Blue*

12

*Rider Fin., Inc. v. Harbor Bank Md.*, No. ELH-11-3101, 2013 WL 1196204, at *6 (D.Md. Mar. 22, 2013) (quoting *Taha*, 378 Md. at 481). The Court of Appeals has noted that being "authorized by the employer" does not require that "authority [be] expressly conferred" by the employer. *See Sawyer*, 322 Md. at 255-57. However, "where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment." *Id.* at 256-57.

Defendant asserts that Plaintiff has put forth "no evidence showing that Mr. George was acting within the scope of his employment when he took the checks from her." (ECF No. 21-1, at 17). Defendant argues that "[t]he undisputed facts show that Mr. George was not authorized by Norcom to accept money from customers or potential customers for annuities or other investments." (*Id.*). As evidence, Defendant cites to Mr. DeFronzo's affidavit and the depositions of Mr. George's former colleagues. (*See* ECF Nos. 21-4 ¶ 41; 21-10, at 5; 21-11, at 5). Furthermore, Defendant argues that Mr. George was not acting within the scope of employment because he carried out his scheme "for his own personal benefit" and did not intend to benefit Norcom. (ECF No. 21-1, at 18).

Plaintiff counters that "[w]ithout question, Mr. George's solicitation of [Plaintiff] to refinance her Silver Spring, Maryland condominium through Norcom in 2014 was an authorized act which furthered Norcom's business." (ECF No. 23, at 7). Plaintiff asserts that "[a]ll of the relevant communications took place during business hours, and Mr. George . . . engaged the services of multiple individuals at Norcom to collect documents, package the same, underwrite the loan, and to close the transaction, which was to [Norcom's] direct financial benefit." (*Id.* at 9). Plaintiff contends that "[u]nder such facts, and understanding that Mr. George was . . . 'plainly authorized' to solicit customers like [Plaintiff] to have Nortchom refinance their existing mortgages, this too is a situation that exposed the employer on a *respondeat superior* basis." (*Id.*).

The parties primarily rely on two recent unreported opinions in this district. These two opinions are informative and ultimately support granting summary judgment for Defendant. Defendant cites to this court's decision in *Day v. DB Capital Group, LLC*, No. DKC-10-1658, 2011 WL 887554 (D.Md. Mar. 11, 2011). In *Day*, the plaintiff brought claims against Wachovia and Millennium Bank under a *respondeat superior* theory for an alleged foreclosure rescue scam perpetuated by an employee at each bank. The plaintiff in *Day* alleged that the employees took

14

advantage of their positions at the banks to recruit potential

victims, used bank resources to "conduct the business" of the

fraudulent entity, and utilized the banks' names to earn trust

from potential customers.    The court in *Day* granted the

defendant's motion to dismiss, stating:

> Plaintiff has alleged only that [the employees] conducted acts relating to the DB Capital foreclosure rescue scam from their offices at Wachovia and Millennium Bank and during business hours and that their actions may have had the incidental effect of obtaining a few extra customers for the banks.  Plaintiff has not alleged any facts to indicate that [the employees] were motivated by a desire to benefit their employers.

*Id.* at *21.

Plaintiff cites to *Blue Rider*, 2013 WL 1196204, to support

her assertions that Mr. George was acting within the scope of

his employment.    In *Blue Rider*, Judge Hollander applied the

aforementioned scope-of-employment factors and determined that

the plaintiff had alleged sufficient facts to survive a motion

to dismiss.  Specifically:

> [The employee's] alleged tortious conduct was the facilitation of a loan transaction, an act that certainly may have been within the ordinary scope of responsibility of a bank vice president. The acts apparently were performed by [the employee] during business hours at his office at Harbor Bank. There is no indication that [the employee] was a recent hire. Other employees of Harbor Bank specifically stated to Blue Rider that [the employee], and only [the employee], was

authorized to handle the transaction. The financial transaction at issue came within the enterprise of banking. Harbor Bank had reason to believe that [the employee] was engaged in the fraudulent scheme, because it had been alerted to the scheme by Quick Draw. [The employee's] actions seemingly were of a type he would have undertaken in the course of his ordinary business, as authorized by Harbor Bank. The "instrumentality by which the harm was done" was [the employee's] title as vice president of Harbor Bank, and Harbor Bank's offices and communications infrastructure, all of which were "furnished by [Harbor Bank] to [Dunn]." [*Great Atl. & Pac. Tea Co. v. Nopenberger*, 171 Md. 378, 391 (1937)]. Harbor Bank points to no apparent "departure from the normal method of accomplishing an authorized result." *Id.* The only *Noppenberger* factor that weighs in Harbor Bank's favor is that Dunn's alleged actions most likely were criminal. But, as the *Noppenberger* Court observed, "an act may be within the scope of employment, even though forbidden or done in a forbidden manner, or consciously criminal or tortious." *Id.*

*Blue Rider*, 2013 WL 1196204, at *7.

Plaintiff's argument and reliance on *Blue Rider* is unpersuasive. The undisputed facts here are more analogous to the facts alleged in *Day* than those in *Blue Rider*, and they show that Mr. George was not acting within the scope of his employment at Norcom.[2]   Notably, Judge Hollander distinguished

---

[2]   It is important to note the difference in procedural posture between this case and the two cases the parties cite. Both *Day* and *Blue Rider* were at the motion to dismiss stage, and the courts accepted the plaintiffs' well-plead allegations as true.   Here, at the summary judgment stage, Plaintiff cannot rely on allegations and assertions to survive Defendant's

the situation in *Blue Rider* with that in *Day* because the complaint in *Blue Rider* alleged that the bank was aware of the employee's fraudulent activity. *Id.* at *9. In addition, the employee in *Blue Rider* was fulfilling his job duties by negotiating the fraudulent instruments, whereas the employees in *Day* were "moonlighting" and performing tasks outside their regular job duties. *Id.* The undisputed facts here show that no one else at Norcom was aware of Mr. George's activity. (ECF Nos. 21-4 ¶¶ 21-23; 21-7, at 6-7; 21-10, at 5-6). Moreover, Plaintiff's unsupported assertion that Mr. George was authorized to solicit customers and accept payments is not sufficient to overcome the undisputed evidence that such activities were not among his official duties at Norcom. Rather, the facts show that Mr. George was moonlighting outside his official role to conduct his fraudulent activities. (ECF Nos. 21-4 ¶¶ 24-26; 21-10, at 5).

Much like in *Day*, Mr. George's efforts may have had "the incidental effect" of providing a minimal amount of additional business for Norcom, but there are no facts showing that Mr. George was motivated by a desire to benefit Norcom. *See Day*, 2011 WL 887554, at *21. The Court of Special Appeals of

---

motion.    Accordingly,    the    court    will    look    at    the    undisputed facts in the record, rather than allegations made by the parties, to determine if Mr. George was acting within the scope of his employment.

Maryland, in upholding a jury verdict, held that evidence
showing that an employee's fraudulent scheme was motivated in
part by a desire to increase his standing within the company may
be sufficient to establish liability through *respondeat
superior*. *See Fidelity First Home Mortg. Co. v. Williams*, 208
Md.App. 180, 206 (2012).  Here, there is no evidence showing Mr.
George was motivated by anything other a desire for personal
gain separate and apart from his role at Norcom.  It is possible
that Norcom received a marginal benefit from Plaintiff's
refinancing, but Mr. George was motivated by the prospect of
receiving $60,000 from Plaintiff for his personal use, not by a
desire to provide Norcom with business or bolster his
professional status.  Accordingly, Defendant may not be held
liable through a theory of *respondeat superior*, and its motion
for summary judgment will be granted on Count II.

## IV.  Conclusion

For the foregoing reasons, the motion for summary judgment
filed by Defendant will be granted.  A separate order will
follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
